

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KRISTY H. KIRK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-131-A |
| | § | |
| DRY STORAGE CORP., LOGISTICS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant, Dry Storage Corp., Logistics,[1] for summary judgment as to all claims brought by plaintiff, Kristy H. Kirk. Plaintiff filed an appendix of documents in response to defendant's motion, and also filed a motion to compel. Having considered the motions, plaintiff's appendix, the summary judgment record, and applicable legal authorities, the court concludes that defendant's motion should be granted, and plaintiff's motion should be denied.

I.

Plaintiff's Claims

Plaintiff initiated this action through the filing of her pro se complaint on February 27, 2009; she filed a first amended

---

[1]Defendant identifies itself in its motion as Dry Storage Logistics, Inc.

complaint on March 20, 2009. Plaintiff brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), alleging that defendant discriminated against her on the basis of race, color, and sex in a variety of ways, including terminating her employment for claiming unworked hours when white employees were not terminated for the same conduct.

II.

## The Motion for Summary Judgment

Defendant contends that summary judgment is proper because: one of plaintiff's claims is barred because she failed to timely file a charge of discrimination as to that claim; she cannot establish a prima facie case of discrimination because she was not treated less favorably than similarly situated individuals outside her protected class; defendant's actions were based on legitimate, non-discriminatory reasons and plaintiff is unable to establish pretext; and, she cannot establish that she was subjected to unwelcome harassment that was sufficiently severe or pervasive to alter a term or condition of employment.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment

record:

Defendant is in the business of logistics and supply chain management, and it operates Logistics Centers nationwide that offer services such as dry storage, asset, inventory, and labor management services, and transportation management services, inter alia.  Plaintiff began her employment with defendant in November 2003 as a forklift operator at its facility in Grand Prairie, Texas.[2]

In July 2006, plaintiff and two males, one black and one white, applied for the position of Inventory Control Clerk.  The male applicants were disqualified due to attendance issues, leaving plaintiff the only candidate for the position.  Because the hiring manager was unfamiliar with plaintiff's qualifications, plaintiff was asked to take an assessment test using an internet-based testing site.  Plaintiff took the assessments on July 31, 2006, interviewed for the position on August 4, 2006, and was awarded the position on August 29, 2006, with an effective start date of September 4, 2006.

---

[2] Although the time frame is unclear from the record, at some point plaintiff began working at defendant's facility in Roanoke, Texas, and was working at this facility at the time her employment ended.

During the course of her employment plaintiff received various disciplinary notices from defendant. On June 28, 2007, plaintiff received such a notice for shipping the wrong product to a customer's recipient.[3] In late July or early August 2007, plaintiff and a black male employee both received disciplinary notices for failing to complete a required inspection report prior to operating a forklift. On August 23, 2007, plaintiff received a disciplinary notice for accumulating six points under defendant's attendance policy. Plaintiff complained about receiving the notice but her daily time sheet showed that she had reported late for her shift.

On August 28, 2007, defendant posted a notice seeking employees to serve as trainers. The notice indicated that the trainer was "not a full time dedicated position" and included no additional pay. Def.'s App. at 29. Neither plaintiff nor any other employees at the facility where she worked applied for a trainer position.

On March 7, 2008, plaintiff emailed a complaint to Steve Kemp ("Kemp"), one of her supervisors. On March 14, 2008, Kemp

---

[3]Plaintiff apparently does not dispute that she received the disciplinary notice but disagrees that she sent the wrong product. This dispute, however, does not concern a genuine issue of material fact.

and Karen Harris ("Harris"), human resources manager, met with plaintiff to discuss her complaints about allocation of overtime hours, her job duties, her request for an individual email account, and concerning the internet assessment she completed prior to being hired in the position of Inventory Control Clerk. Kemp also provided plaintiff a memorandum dated March 14, 2008, in which he summarized his responses to her complaints. Def.'s App. at 30.

Kemp explained in the meeting and in the March 14, 2008, memorandum, that in 2007 plaintiff earned $16,554.00 in overtime compensation, compared with average overtime earnings of $5,486.00, making plaintiff's overtime pay the seventh highest out of 152 hourly employees. Further, although defendant in 2008 curtailed overtime hours for all employees, only one employee worked more overtime hours than plaintiff during the first two months of that year. During that same time plaintiff also worked on all three overtime Saturdays available to other employees.

On April 30, 2008, Plaintiff and Bill Miller ("Miller"), an employee from defendant's Arlington warehouse, were working on a special project at defendant's Grand Prairie warehouse. Plaintiff recorded her start time as 7:00 a.m. and her end time as 3:00 p.m. However, plaintiff completed her work at the Grand

Prairie warehouse around noon and left for the day. On May 1, 2008, James Barnes ("Barnes"), plaintiff's supervisor, discovered that she had reported more hours on her time sheet for April 30 than she actually worked. Barnes investigated, first asking plaintiff to explain the discrepancy. Plaintiff stated that Miller had told her the company would pay them for eight hours even though they had only worked four. Miller denied plaintiff's allegation, and instead claimed he told plaintiff she had to go back to work at the Roanoke facility. When plaintiff told Miller that she had previously worked four hours but was paid for eight, he told plaintiff that only happened on special occasions, and that she could help him with his work. Plaintiff refused, stating she was already going to be paid for eight hours. When they finished their work around noon, plaintiff left for the day and Miller returned to the Arlington warehouse.

Based on the information obtained through its investigation, defendant concluded that plaintiff deliberately falsified her time sheet for April 8, 2008. Defendant considered plaintiff's reasons she gave for her action but found none of them to be credible. Defendant terminated plaintiff's employment at the end of her shift on May 1, 2008.

IV.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must

"identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A. Plaintiff's Claim as to Computer Testing Is Time Barred

A Title VII plaintiff must exhaust administrative remedies by filing an administrative charge of discrimination with the EEOC within 300 days of learning of the unlawful conduct. 42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 113-14 (2002); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998). Filing a timely charge with the EEOC "is a precondition to filing suit in district court." Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002).

Here, plaintiff claims defendant discriminated against her by requiring her to take a computer assessment test on July 31, 2006, which white employees were not required to take. Plaintiff

filed her charge of discrimination complaining of the computer test on November 23, 2007, 481 days after the act occurred. Plaintiff's claim regarding the computer test is thus barred by her failure to timely exhaust administrative remedies as to that claim.[4]

B.  Evidentiary Framework

Title VII prohibits an employer from discharging or otherwise discriminating against an individual because of his or her race, color, or sex.  42 U.S.C. § 2000e-2(a)(1).  "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff."  Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (internal citations omitted).  To evaluate claims of discrimination under Title VII absent direct evidence, the court looks to the evidentiary burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

This framework requires plaintiff first to make out a prima facie case.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  The burden then shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions.  McCoy v.

---

[4] Plaintiff makes no claim for equitable tolling of the period for filing her charge of discrimination, nor does anything in the summary judgment record cause the court to think such a claim would be warranted.

City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); Alvarado, 492 F.3d at 611. If defendant meets this burden of production, the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose."[5] McCoy, 492 F.3d at 557.

As plaintiff has offered no direct evidence of race, color, or gender discrimination, she must establish a prima facie case by showing (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and, (4) she was replaced by someone not in the protected class, or others similarly situated but outside the protected class were treated more favorably. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007); Alvarado, 492 F.3d at 611. Defendant argues that plaintiff cannot establish the fourth element of her prima facie case because she cannot show that any other similarly situated employee was treated differently under nearly identical

---

[5] Plaintiff may also rebut defendant's nondiscriminatory reason through evidence that the reason, while true, is only one of the reasons for its conduct, and the plaintiff's protected characteristic is another motivating factor (mixed-motive alternative). See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). In analyzing defendant's motion for summary judgment, the court will only address the pretext alternative, as plaintiff did not assert that defendant's decisions were based on "mixed motives," nor has the court found any evidence of such motives in the summary judgment record.

circumstances. Defendant further contends that even if plaintiff established a <u>prima facie</u> case, it has offered legitimate, non-discriminatory reasons for each action, for which plaintiff is unable to provide evidence of pretext.

C. <u>Plaintiff's Claims Have No Merit</u>

The court agrees that plaintiff has failed to establish a <u>prima facie</u> case as to a portion of her claims because they fail to rise to the level of an adverse employment action.[6] Whether or not plaintiff has established her <u>prima facie</u> case, however, the court agrees that plaintiff has failed to provide evidence of pretext as to any of defendant's reasons.

Plaintiff alleged that defendant engaged in the following discriminatory acts: (1) compensated white employees, but not her, for gasoline consumption; (2) denied, restricted, and curtailed her overtime but granted overtime to white employees; (3) wrongfully terminated her for claiming unworked hours while white employees were not terminated for the same actions; (4) failed to act properly when a manager yelled at her for turning

---

[6] The court recognizes that generally when deciding a motion for summary judgment on grounds other than those raised by the defendant, it would afford plaintiff an opportunity to provide an additional response. The court can see nothing to be gained by doing so in this case. Plaintiff was on notice from defendant's motion and brief of the elements of a <u>prima facie</u> case of race or gender discrimination. Plaintiff offered no legal analysis or authorities in the appendix she filed, and the court is unaware of authority that could be cited by plaintiff that would change the court's conclusion as to the identified actions.

11

off her computer and made disparaging remarks about her, and when another employee made sexually explicit comments; (5) a co-worker called her a "communist" and the supervisor failed to report it; (6) disciplined her more harshly than white employees for the same infractions; and (7) removed plaintiff's e-mail account for refusing to give her password to a white employee.

Adverse employment actions include only "<u>ultimate employment decisions</u> such as hiring, granting leave, discharging, promoting, and compensating."[7] Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (emphasis in original); see also McCoy, 492 F.3d at 559. "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." Pegram, 361 F.3d at 282. Plaintiff's fourth, fifth, sixth, and seventh claims, as set forth above, do not rise to the level of "adverse employment actions" because they do not involve hiring, granting leave, discharging, promoting, or compensating, and thus cannot form the basis of a claim under Title VII.[8] Id.

---

[7] Although the Supreme Court in Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) altered the Fifth Circuit's "adverse employment action" standard as to retaliation claims, it remains the same for discrimination claims. McCoy v. City of Shreveport, 492 F.3d 551, 560 (5th Cir. 2007).

[8] Although a disciplinary action resulting in termination might be considered an adverse employment action, plaintiff does not contend that any of the allegedly discriminatory disciplinary action, other than for falsifying her time sheet, led to her termination.

12

As to the remaining claims, defendant offered the affidavit of Debra Adkisson ("Adkisson"), its Senior Regional Manager, Human Resources, to explain its legitimate reasons for its actions. On the claim of gasoline reimbursement, Adkisson stated that defendant's policy is not to reimburse employees for gas for their regular commute, but only if they travel between company locations during the work day or are assigned to work in a location that requires a significantly longer than normal commute. According to Adkisson, plaintiff was denied compensation for gasoline the day she traveled to Grand Prairie because it was shorter than her usual commute to Roanoke.

Plaintiff does not dispute defendant's reason. Plaintiff instead claims Miller told her he was compensated for gasoline on April 8, 2008, when he returned to Arlington, and she claims that Harris admitted the same during plaintiff's unemployment hearing. These statements are hearsay and are not competent summary judgment evidence. See Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995) (summary judgment evidence may be considered to the extent not based on hearsay).

As to plaintiff's claim that defendant denied, restricted, and curtailed her overtime but granted overtime to white employees, defendant's summary judgment evidence shows that in

13

2007, plaintiff earned $16,554.00 in overtime compensation, the seventh-highest out of 152 hourly employees, compared to the average overtime earnings of $5,486.00; in 2008, when defendant curtailed all overtime, plaintiff still worked more overtime hours than all hourly employees except one; and, plaintiff worked all three overtime days offered to employees in her department. Again, plaintiff did not dispute defendant's evidence, nor did she provide any summary judgment evidence that any other similarly situated employee was treated more favorably.

Although not included in her complaint, plaintiff in her EEOC charge alleged that defendant denied her a promotion to the position of trainer, to which five white employees were allegedly promoted. Defendant's summary judgment evidence shows that the notice posted on August 28, 2007, seeking employees to serve as trainers indicated that the position was not full-time and involved no additional pay. Defendant contends that plaintiff never applied for a trainer position, and no applications for trainer were received from any other employee at the facility where she worked. Although plaintiff claims the trainer position was only posted for one day, she does not dispute that she never applied for the position, nor does she offer summary judgment

14

evidence as to any other employee who applied for, and was given, the position.

Finally, plaintiff claims that defendant wrongfully terminated her for claiming unworked hours while white employees were not terminated for the same actions. Defendant's summary judgment evidence shows that on May 1, 2008, Barnes discovered that plaintiff had reported more hours on her time sheet than she had worked at the Grand Prairie facility on April 30, 2008, by claiming she worked from 7:00 a.m. until 3:00 p.m. when she in fact left around noon. Barnes investigated, questioning plaintiff and Miller, her coworker. Defendant considered plaintiff's explanations for the discrepancy on her time sheet-- that Miller told her she could work four hours but get paid for eight, that she believed her actions were authorized by defendant's policy, and that she had received such payments in the past. However, defendant found none of her explanations to be credible.

Based on it's investigation, defendant concluded that plaintiff had intentionally falsified her time sheet by recording that she worked eight hours when in fact she only worked four. Defendant's employee handbook provides that falsification of time records is grounds for discipline or termination. Accordingly,

defendant terminated plaintiff's employment. Violation of company rules or policies is a legitimate, non-discriminatory reason for dismissal. See e.g., Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

In her affidavit filed in response to the motion, plaintiff contends that on May 1, 2008, she discussed with Barnes how to code her time sheet for the April 30, 2008, work day. However, plaintiff does not dispute that on April 30 she worked approximately four hours but recorded eight on her time sheet. Further, even if plaintiff disagreed with defendant's conclusion resulting from its investigation, or believed defendant erred in its conclusions, that alone cannot defeat summary judgment. "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Id. "[A]n employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (internal citations omitted). Nor has plaintiff produced summary judgment evidence of any other employee who also falsified his or her time sheet but was treated differently.

Thus, plaintiff has adduced nothing as would show defendant's reason for her termination was a pretext for unlawful discrimination.

Although it is unclear if plaintiff purports to assert a claim for hostile work environment, the court agrees with defendant that none of the complained-of conduct could support such a claim, and plaintiff has adduced no summary judgment evidence which shows otherwise. See Turner, 476 F.3d at 347 (explaining that hostile work environment claims require consideration of "totality of the circumstances" including frequency and severity of alleged conduct, whether it is physically threatening or humiliating, or unreasonably interferes with employee's work performance).

## VI.

### Plaintiff's Motion to Compel

In conjunction with her appendix in response to defendant's motion plaintiff also filed a motion to compel, in which she asks the court to order defendant to produce all time sheets for December 2007 through June 2008 for all employees of the Inventory Control Department, as well as "all documents" for

seven specified individuals and "[a]ll black women that reported to Kermit MacAbee from 2006-2008." Pl.'s Mot. to Compel at 2.

If plaintiff believed she was unable to present facts essential to justify her opposition to defendant's summary judgment motion, her recourse was to file a motion for continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Even if the court were to liberally construe her motion as one for continuance, however, it would still be denied. To prevail on such a motion plaintiff must "specifically explain both why [she] is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable [her] to present such evidence." Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 719 (5th Cir. 1999) (internal citations omitted). In seeking a continuance a party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment." Id. at 720.

Plaintiff has failed to make the required showing. In her motion, plaintiff does not explain why she needs the documents, or what evidence to support her summary judgment response she expects to obtain from them. Further, plaintiff fails to adequately demonstrate that she used due diligence to obtain the

18

documents from defendant during the discovery period. See <u>Baker v. Am. Airlines, Inc.</u>, 430 F.3d 750, 756 (5th Cir. 2005). Accordingly, the court concludes that plaintiff's motion should be denied.

## VII.

### Order

Therefore,

For the reasons stated herein,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Kristy H. Kirk, against defendant, Dry Storage Corp., Logistics, be, and are hereby, dismissed with prejudice.

The court further ORDERS that plaintiff's motion to compel be, and is hereby, denied.

SIGNED March 12, 2010.

_____
JOHN McBRYDE
United States District Judge